UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| THE DUCKPOND CRT UTD 2/14/2003, on Behalf of Itself and All Others Similarly Situated, | § § § § | No. |
| | § | CLASS ACTION |
| Plaintiff, | § § | |
| | § | COMPLAINT FOR BREACH OF |
| v. | § § | FIDUCIARY DUTIES |
| PAA NATURAL GAS STORAGE, L.P., GREG L. ARMSTRONG, HARRY N. PEFANIS, DEAN LIOLLIO, AL SWANSON, ARTHUR L. SMITH, VICTOR BURK, BOBBY S. SHACKOULS, PLAINS ALL AMERICAN PIPELINE, L.P., PNGS GP LLC, PAA GP LLC, PLAINS AAP, L.P., PLAINS ALL AMERICAN GP LLC, and PAA ACQUISITION COMPANY LLC, | § § § § § § § § § § § § | |
| Defendants. | § § | |
| | § | DEMAND FOR JURY TRIAL |

## INTRODUCTION

1.      This is a stockholder class action brought by plaintiff on behalf of the holders of PAA Natural Gas Storage, L.P. ("PNG" or the "Company") common units against the Company, the members of the Board of Directors (the "Board" or "Individual Defendants"), Plains All American Pipeline, L.P. ("PAA"), PNGS GP LLC ("PNGS"), PAA GP LLC ("PAAGP"), Plains AAP, L.P. ("Plains AAP"), Plains All American GP LLC ("Plains AAGP"), and PAA Acquisition Company LLC ("Merger Sub").  This action seeks to enjoin defendants from further breaching their fiduciary duties in their pursuit of a sale of the Company to PAA at an unfair price through an unfair and self-serving process (the "Proposed Acquisition").

2.      PNG is a fee-based, growth-oriented limited partnership that was formed by PAA in 2010 to own, operate, and grow the natural gas storage business which PAA acquired in 2005.  PAA is PNG's controlling unitholder and currently owns 100% of the membership interests in PNGS, 100% of the outstanding subordinated units of PNG, and approximately 46% of the 61.2 million outstanding common units of PNG.  In addition, PAA is responsible for electing or approving the directors to serve on the PNGS Board, and PNGS and PAA have interlocking Chairmen of the Board, Chief Executive Officers ("CEOs"), Executive Vice Presidents, Chief Financial Officers ("CFOs"), other Executive Officers, and one common director.

3.      Defendants first announced after the market closed on August 27, 2013, that the Board's general partner received a proposal from PAA, whereby PAA would acquire all of PNG's remaining outstanding publicly held common units through a unit-for-unit exchange.  At that time, PAA was proposing consideration of 0.435 common units of PAA for each issued and outstanding publicly held PNG common unit, representing a value of $22.74 per unit based on the trailing ten-day average closing price of PAA's common units through August 26, 2013.  At the time of the announcement, the proposed consideration amounted to an approximate 6.1% premium based on the two companies' August 27, 2013 trading prices.

4.      In response to the above offer, defendants referred the proposal to a purported "Conflicts Committee" to evaluate and negotiate with PAA.  Then on October 22, 2013, defendants announced that the Board had entered into an Agreement and Plan of Merger on October 21, 2013 (the "Merger Agreement"), whereby PNG will become a wholly-owned subsidiary of PAA, through a unit-for-unit exchange.  Under the terms of the Merger Agreement, PNG's public unitholders will receive 0.445 common units of PAA for each PNG common unit (a modest 0.01 increase from the August 27, 2013 proposal), plus cash in lieu of any fractional common units of PAA otherwise issuable in the Proposed Acquisition.  The Proposed Acquisition amounts to $23.07 per unit based on the closing prices of both companies on the day before the announcement.  The Proposed Acquisition minimally bumped up the premium from the previous offer to approximately 9.38%, based on the companies' closing prices on August 27, 2013, the day before the market price had adjusted based on PAA's initial offer.

5.      Due to PAA's control of PNG, the Proposed Acquisition is subject to Delaware's stringent "entire fairness" standard of review, which requires the deal to be at a fair price and be the result of a fair process.  The transaction fails to meet this standard.  The Proposed Acquisition is the result of an unfair and self-serving process.  The implied price of $23.07 per unit which resulted from this process materially undervalues the Company and is unfair to its unitholders.  PNG has experienced continuing solid financial results over the past few financial quarters and significant growth for years.  The Company has exceeded analysts' earnings per share ("EPS") and net income expectations for the last nine quarters, and exceeded analysts' sales expectations for the last three quarters.  Further, compared to the same period last year, for the six months ending June 30, 2013, the Company experienced an 8% increase in earnings before interest, taxes, depreciation, and amortization ("EBITDA") (from $54.8 million to $59.8 million) and a 4.6% increase in net income (from $33 million to $34.5 million).  Importantly, this significant growth occurred despite the fact

that market conditions for natural gas storage has considerably depressed.  As noted by PNG's President on August 5, 2013:

> Although market conditions for natural gas storage have weakened considerably over the last few months, we are pleased with the performance of our assets and our team through the first half of 2013 as well as our positioning for the remainder of the year. Our organic growth projects remain on time and on budget, and we continue to execute our disciplined business strategy while maintaining a solid balance sheet and liquidity.

Despite PNG's bright future, unitholders will not be able to reap the long-term benefits as a result of the defendants' self-interested decision to sell the Company before the recently deteriorated market conditions for natural gas storage have rebounded.

6.     The inadequacy of the proposed consideration is particularly evident when considering that the average one-day premium to a target's stock price for transactions valued between $500 million and $5 billion announced in the last three years in the gas storage and transportation industry is *over 38%, nearly four times greater than the one-day premium being offered by PAA*.

7.     While the Board is intent on cashing out PNG unitholders at an unfair price, the Individual Defendants and members of the Company's senior management team will receive immediate benefits from the closing of the Proposed Acquisition.  Because PNG will operate as a wholly-owned subsidiary of PAA if the Proposed Acquisition is consummated, it appears that certain members of the PNG senior management team will receive prestigious positions at PAA when the Company is combined with the PAA management team.  Further, on information and belief, it appears that certain Individual Defendants will receive substantial bonuses or other consideration in connection with the Company's change in control.  More, PAA has agreed to vote its common units and subordinate units in favor of the acquisition.  As noted above, PAA owns 46% of the common units, and 100% of the subordinate units.  Thus, PAA only needs 4% of the remaining common units to vote in favor of the Proposed Acquisition in order for the transaction to be approved in its favor.

Any potential third party will necessarily already have the unitholder vote substantially stacked against it.

8.      In pursuing their unlawful plan to squeeze out PNG's public unitholders, the Individual Defendants, who are directors and officers of PNG's general partner, have breached their fiduciary duties of loyalty and care.  The other defendants have aided and abetted the Individual Defendants' breaches of fiduciary duties.  Thus, plaintiff also seeks injunctive relief to enjoin the Proposed Acquisition due to the Individual Defendants' breaches of their fiduciary duty.

## JURISDICTION AND VENUE

9.      This Court has jurisdiction over all causes of action asserted herein pursuant to 28 U.S.C. §1332(a)(2) in that plaintiff and defendants are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.  This action is not a collusive action designed to confer jurisdiction on a court of the United States that it would not otherwise have.

10.     This Court has jurisdiction over each defendant named herein because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by the District courts permissible under traditional notions of fair play and substantial justice.

11.     Venue is proper in this Court pursuant to 28 U.S.C. §1391(a) because: (i) PNG maintains its principal place of business in this District; (ii) one or more of the defendants either resides in or maintains executive offices in this District; (iii) a substantial portion of the transactions and wrongs complained of herein, including the defendants' primary participation in the wrongful acts detailed herein, and aiding and abetting and conspiracy in violation of fiduciary duties owed to PNG, occurred in this District; and (iv) defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## PARTIES

12.     Plaintiff The DuckPond CRT utd 2/14/2003 is a unitholder of PNG, and has been at all relevant times.  Plaintiff is a citizen of Wisconsin.

13.     Defendant PNG is a Delaware limited partnership with principal executive offices located at 333 Clay Street, Suite 1500, Houston, Texas.  Accordingly defendant PNG is a citizen of Delaware and Texas.  Defendant PNG is a fee-based, growth-oriented limited partnership that was formed by defendant PAA in 2010 to own, operate, and grow the natural gas storage business which defendant PAA acquired in 2005.  Defendant PNG owns and operates three natural gas storage facilities located in Louisiana, Mississippi, and Michigan.  Defendant PNG does not directly employ personnel to manage or operate its business, rather, pursuant to an omnibus agreement its personnel are employed by defendant Plains AAGP.  Defendant PNG is also managed and operated by the directors and officers of its general partner, defendant PNGS.  The PNGS directors are chosen by defendant PAA.  Defendant PNG's unitholders do not have the right to elect PNGS directors.  Defendant PAA owns 100% of the outstanding subordinated units and approximately 46% of the outstanding common units of defendant PNG.  Upon completion of the Proposed Acquisition, defendant PNG will become a wholly-owned subsidiary of defendant PAA.

14.     Defendant Greg L. Armstrong ("Armstrong") is PNGS's Chairman of the Board, CEO and a director and has been since January 2010.  Defendant Armstrong is also PAAGP's Chairman of the Board, CEO, and a director and has been since 1998.  Defendant Armstrong was President, CEO, and a director of Plains Resources Inc. ("Plains Resources") from 1992 to May 2001; President and Chief Operating Officer from October 1992 to December 1992; Executive Vice President and CFO from June 1992 to October 1992; Senior Vice President and CFO from 1991 to 1992; Vice President and CFO from 1984 to 1991; Corporate Secretary from 1981 to 1988; and Treasurer from 1984 to 1987.  Defendant Armstrong is a citizen of Texas.

15.     Defendant Harry N. Pefanis ("Pefanis") is PNGS's Vice Chairman and a director and has been since January 2010. Defendant Pefanis is also PAAGP's President and Chief Operating Officer and has been since 1998. Defendant Pefanis was Executive Vice President - Midstream of Plains Resources from May 1998 to May 2001; Senior Vice President from February 1996 until May 1998; Vice President - Products Marketing from 1988 to February 1996; Manager of Products Marketing from 1987 to 1988; and Special Assistant for Corporate Planning from 1983 to 1987. Defendant Pefanis previously served as President of several former midstream subsidiaries of Plains Resources until the formation of defendant PAA. Defendant Pefanis is a citizen of Texas.

16.     Defendant Dean Liollio ("Liollio") is PNGS's President and a director and has been since January 2010. Defendant Liollio is also President of PAA's natural gas storage business and has been since November 2008. Defendant Liollio is a citizen of Texas.

17.     Defendant Al Swanson ("Swanson") is PNGS's Executive Vice President, CFO, and a director and has been since July 2011. Defendant Swanson is also PAAGP's Executive Vice President and CFO and has been since February 2011. Defendant Swanson was PNGS's Senior Vice President, CFO, and a director from January 2010 to July 2011. Defendant Swanson was also PAAGP's Senior Vice President and CFO from November 2008 to February 2011; Senior Vice President - Finance from August 2008 to November 2008; Senior Vice President - Finance and Treasurer from August 2007 to August 2008; Vice President - Finance and Treasurer from August 2005 to August 2007; Vice President and Treasurer from February 2004 to August 2005 and Treasurer from May 2001 to February 2004. Defendant Swanson was Treasurer of Plains Resources from February 2001 to May 2001 and Director of Treasury from November 2000 to February 2001. Defendant Swanson is a citizen of Texas.

18.     Defendant Arthur L. Smith ("Smith") is a director of PNGS and has been since December 2010. Defendant Smith was also a director of Plains AAGP from February 1999 to

December 2010.  Defendant Smith is Chairman of the PNGS Conflicts Committee that approved the Proposed Acquisition.  Defendant Smith is a citizen of Texas.

19.     Defendant Victor Burk ("Burk") is a director of PNGS and has been since April 2010. Defendant Burk is also a member of the PNGS Conflicts Committee that approved the Proposed Acquisition.  Defendant Burk is a citizen of Texas.

20.     Defendant Bobby S. Shackouls ("Shackouls") is a director of PNGS and has been since April 2010.  Defendant Shackouls is also a member of the PNGS Conflicts Committee that approved the Proposed Acquisition.  Defendant Shackouls is a citizen of Texas.

21.     Defendant PAA is a Delaware limited partnership with principal executive offices located at 333 Clay Street, Suite 1600, Houston, Texas.  Accordingly defendant PAA is a citizen of Delaware and Texas.  Defendant PAA is engaged in the transportation, storage, terminalling, and marketing of crude oil, as well as in the processing, transportation, fractionation, storage, and marketing of natural gas liquids.  As the sole member of defendant PNGS, defendant PAA owns 100% of the membership interests in defendant PNGS and therefore is the ultimate owner of defendant PNG's 2% general partner interest, all of the incentive distribution rights, and is the largest unitholder of defendant PNG with approximately 64% limited partner interests.  In connection with the Proposed Acquisition, defendant PAA has agreed to vote its common units and subordinated units, representing approximately 46% of the outstanding common units and 100% of the outstanding subordinated units of defendant PNG, in favor of the Proposed Acquisition.  Upon completion of the Proposed Acquisition, defendant PAA will be the sole limited partner of the surviving corporation.

22.     Defendant PNGS is a Delaware limited liability company whose sole member is defendant PAA.  Defendant PNGS is also the general partner of defendant PNG.  Defendant PNGS has sole responsibility for conducting and managing defendant PNG's operations and owns a 2% general partner interest and all of defendant PNG's incentive distribution rights.  Upon completion of

the Proposed Acquisition, defendant PNGS will remain a wholly-owned subsidiary of defendant PAA and will become the sole general partner of the surviving corporation.

23.     Defendant PAAGP is a Delaware limited liability company, whose sole member is defendant Plains AAP.  Defendant PAAGP is also the general partner of defendant PAA.

24.     Defendant Plains AAP is a Delaware limited partnership and owns a 100% membership interest in defendant PAAGP.

25.     Defendant Plains AAGP is a Delaware limited liability company and is the general partner of defendant Plains AAP.  Defendant Plains AAGP manages defendant PAA's operations and activities and employs all of defendant PNG's personnel.

26.     Defendant Merger Sub is a Delaware limited liability company and wholly-owned subsidiary of defendant PAA.  Upon completion of the Proposed Acquisition, defendant Merger Sub will merge with and into defendant PNG and cease its separate existence.

27.     The defendants named above in ¶¶14-20 are sometimes collectively referred to herein as the "Individual Defendants."

## THE INDIVIDUAL DEFENDANTS' FIDUCIARY DUTIES

28.     Section 2.1 of PNG's Amended and Restated Agreement of Limited Partnership (the "Limited Partnership Agreement") provides that "[e]xcept as expressly provided to the contrary in this Agreement, the rights, duties (including fiduciary duties), liabilities and obligations of the Partners and the administration, dissolution and termination of the Partnership shall be governed by the Delaware Act." Section 1.1 of the Limited Partnership Agreement defines the "Delaware Act" to mean the Delaware Revised Uniform Limited Partnership Act, 6 Del. C. section 17101, et seq. ("DRULPA"), and "Partners" to mean "the General Partner and the Limited Partners."

29.     Section 14.2(a) of the Limited Partnership Agreement limits the General Partner's fiduciary duties in connection with "any merger, consolidation or conversion of the Partnership," but only with respect to declining to consent to a merger.  Consistent with Section 2.1 of the Limited

Partnership Agreement, the approval of "any merger, consolidation or conversion of the Partnership" by the General partner must be consistent with its fiduciary duties. Accordingly, because Delaware's common law fiduciary duties were not excluded by the Limited Partnership Agreement, they apply here.

30.     Under Delaware law, in any situation where the directors of a publicly traded corporation undertake a transaction that will result in a change in corporate control, the directors have an affirmative fiduciary obligation to obtain the highest value reasonably available for the corporation's unitholders, including a significant control premium. This duty arises in at least the following three circumstances: (i) when a corporation initiates an active bidding process seeking to sell itself or to effect a business reorganization involving a clear break-up of the company; (ii) where, in response to a bidder's offer, a target abandons its long-term strategy and seeks an alternative transaction involving the break-up of the company; or (iii) when approval of a transaction results in a sale or change of control. To diligently comply with these duties, neither the directors nor the officers may take any action that:

(a)     adversely affects the value provided to the corporation's unitholders;

(b)     will discourage, inhibit, or deter alternative offers to purchase control of the corporation or its assets;

(c)     contractually prohibits themselves from complying with their fiduciary duties;

(d)     will otherwise adversely affect their duty to secure the best value reasonably available under the circumstances for the corporation's unitholders; or

(e)     will provide the directors and/or officers with preferential treatment or benefits at the expense of, or which are not shared equally with, the public unitholders.

31.     In accordance with their duties of loyalty and good faith, the Individual Defendants, as directors and officers of PNG's general partner, are obligated under Delaware law to refrain from:

(a)     participating in any transaction where the directors' or officers' loyalties are divided;

(b)     participating in any transaction where the directors or officers receive, or are entitled to receive, a personal financial benefit not equally shared by the public unitholders of the corporation; and

(c)     unjustly enriching themselves at the expense or to the detriment of the public unitholders.

32.     Defendants, separately and together, in connection with the Proposed Acquisition, are knowingly or recklessly violating their fiduciary duties, and/or have aided and abetted such breaches, including their duties of loyalty and due care owed to plaintiff and the other public unitholders of PNG.  The Individual Defendants stand on both sides of the transaction, are engaging in self-dealing, and are obtaining for themselves personal benefits not shared equally by PNG's public unitholders generally.  As a result of the Individual Defendants' self-dealing and divided loyalties, neither plaintiff nor the Class (as defined herein) will receive adequate or fair value for their PNG common units in the Proposed Acquisition.

33.     The Individual Defendants have knowingly or recklessly breached their duties of loyalty, good faith, candor, and due care in connection with the Proposed Acquisition, and/or have aided and abetted therein.  As such, the burden of proving the inherent or entire fairness of the Proposed Acquisition, including all aspects of its negotiation, structure, price, and terms, is placed upon the Individual Defendants as a matter of law.

**THE PROPOSED ACQUISITION**

34.     On August 27, 2013, the Board's general partner, PNGS, received a proposal from PAA, whereby PAA would acquire all of PNG's remaining outstanding publically held common units through a unit-for-unit exchanger.  At that time, PAA was proposing consideration of 0.435 common units of PAA for each issued and outstanding publicly held PNG common unit,

representing a value of $22.74 per unit based on the trailing ten-day average closing price of PAA's common units through August 26, 2013.   At the time of the announcement, the proposed consideration amounted to an approximate 6.1% premium based on the two companies' August 27, 2013 trading prices.

35.     Then on October 22, 2013, defendants announced that the Board had entered into the Merger Agreement whereby PNG will become a wholly-owned subsidiary of PAA, through a unit-for-unit exchange.   Under the terms of the Merger Agreement, PNG's public unitholders will receive 0.445 common units of PAA for each PNG common unit (a modest 0.01 increase from the initial August 27, 2013 proposal), plus cash in lieu of any fractional common units of PAA otherwise issuable in the Proposed Acquisition.   The Proposed Acquisition amounts to $23.07 per unit based on the closing prices of both companies on the day before the announcement.   The Proposed Acquisition minimally bumped up the premium from the previous offer to approximately 9.38%, based on the companies' closing prices on August 27, 2013, the day before the market price had adjusted based on PAA's initial offer.   The press release announcing the transaction stated in relevant part:

> Plains All American Pipeline, L.P. (NYSE: PAA) today announced that it has entered into a definitive agreement and plan of merger (the "Merger Agreement") with PAA Natural Gas Storage, L.P. ("PNG") that provides for a merger whereby PNG will become a wholly-owned subsidiary of PAA, through a unit-for-unit exchange (the "Merger"). Under the terms of the Merger Agreement, PNG's public unitholders will receive 0.445 common units of PAA per PNG common unit surrendered pursuant to the Merger Agreement, plus cash in lieu of any fractional common units of PAA otherwise issuable in the Merger.

> The transaction is expected to result in approximately 14.7 million additional common units being issued by PAA. In connection with the closing of the Merger, the owners of PAA's general partner have agreed to reduce their incentive distribution rights under PAA's Agreement of Limited Partnership by $12 million in each of 2014 and 2015, $10 million in 2016 and $5 million per year thereafter.

> The terms of the Merger Agreement were approved by the Conflicts Committee of the board of directors of the general partner of PNG (the "Conflicts Committee"), who negotiated the terms on behalf of PNG. The Conflicts Committee is comprised solely of independent directors. In addition, Evercore acted as financial advisor to the

Conflicts Committee and delivered a fairness opinion to the Conflicts Committee in connection with the transaction.

The closing of the Merger is subject to the satisfaction of certain conditions, including the approval of the Merger and the Merger Agreement at a special meeting of the unitholders of PNG by the affirmative vote of holders of a majority of the outstanding PNG common units (including PNG common units held by PAA) voting as a separate class and the affirmative vote of holders of a majority of PNG's outstanding subordinated units voting as a separate class. PAA owns 100% of the membership interests in the general partner of PNG, 100% of the outstanding subordinated units of PNG and approximately 46% of the 61.2 million outstanding common units of PNG. Pursuant to the Merger Agreement, PAA has agreed to vote its common units and subordinated units in favor of the Merger. The parties anticipate that the Merger will close in the latter half of the fourth quarter of 2013, and that the previously announced quarterly distribution of $0.3575 per PNG common unit payable to holders of record of such units on November 1, 2013 will be paid on November 14, 2013 as scheduled.

\* \* \*

PAA, PNG and certain of their respective directors and executive officers may be deemed to be participants in the solicitation of proxies from the unitholders of PNG in connection with the proposed transaction. Information about the directors and executive officers of the general partner of PAA is set forth in PAA's Annual Report on Form 10-K for the year ended December 31, 2012, which was filed with the Securities and Exchange Commission on February 27, 2013. Information about the directors and executive officers of the general partner of PNG is set forth in PNG's Annual Report on Form 10-K for the year ended December 31, 2012, which was filed with the Securities and Exchange Commission on February 27, 2013. These documents can be obtained without charge at the Securities and Exchange Commission's website indicated above. Additional information regarding the interests of these participants may be obtained by reading the proxy statement/prospectus regarding the proposed transaction when it becomes available.

36.     On October 24, 2013, the Company filed a Form 8-K with the U.S. Securities and Exchange Commission ("SEC") wherein it disclosed the Merger Agreement.  The Merger Agreement contains a number of draconian deal protection devices designed to preclude any competing bids for PNG from emerging in the period following the announcement of the Proposed Acquisition—effectively locking-up the deal in favor of PAA.  As the Individual Defendants were duty bound to maximize unitholder value in connection with the Proposed Acquisition, the inclusion of these provisions, as detailed below, constitutes a further breach of their fiduciary duties.

37.     Under the Merger Agreement, PNG is subject to a no-solicitation clause that prohibits the Company from seeking a superior offer for its unitholders.  Specifically, section 6.6 of the Merger Agreement states, in pertinent part:

(a) [PNGS] and [PNG] shall, and they shall cause the Subsidiaries and Representatives of [PNGS] and [PNG] to, immediately cease and terminate any solicitation, encouragement, discussions or negotiations with any Person that may be ongoing with respect to or that may reasonably be expected to lead to, an Acquisition Proposal.

(b) Neither [PNGS] nor [PNG] shall, and they shall use their commercially reasonable efforts to cause the Subsidiaries and Representatives of [PNGS] and [PNG] not to, directly or indirectly, (i) initiate, solicit, knowingly encourage or knowingly facilitate (including by way of furnishing information) any inquiries regarding, or the making or submission of any proposal or offer that constitutes, or may reasonably be expected to lead to, an Acquisition Proposal, (ii) conduct or participate in any discussions or negotiations regarding any Acquisition Proposal, or (iii) furnish to any Person any non-public information or data relating to [PNG] or any of its Subsidiaries. Notwithstanding the foregoing, at any time prior to obtaining [PNG] Unitholder Approval, the [PNGS] Conflicts Committee may take the actions described in clauses (ii) and (iii) of this Section 6.6(b) with respect to any Person that makes a bona fide written Acquisition Proposal that did not result from a material breach of this Section 6.6(b), if (A) the [PNGS] Conflicts Committee, after consultation with its outside legal counsel and financial advisors, determines in good faith that such Acquisition Proposal constitutes or could reasonably be expected to result in a Superior Proposal and that the failure to take such action would be inconsistent with its duties under the [PNG] Partnership Agreement or applicable Law, and (B) prior to furnishing any such non-public information to such Person, [PNG] receives from such Person an executed confidentiality agreement with reasonable customary terms as to the treatment of confidential information. [PNGS] and [PNG] shall, as promptly as practicable (and in any event within 48 hours), advise PAA in writing of any Acquisition Proposal received from any third Person, including the identity of such third Person, or any request for discussions or negotiations with respect to any Acquisition Proposal, and the material terms of such Acquisition Proposal or request, as well as the identity of the Person making such proposal or request. [PNGS] and [PNG] shall, as promptly as practicable (and in all events within 48 hours), provide to PAA copies of any written materials received by [PNGS], [PNG] or any of their Subsidiaries or Representatives in connection with any of the foregoing.

(c) [PNGS] and [PNG] shall keep PAA reasonably informed of any material developments regarding or changes in any Acquisition Proposal on a reasonably current basis (and in all events within 36 hours of such material development). [PNGS] and [PNG] agree that they and their Subsidiaries will not enter into any confidentiality agreement with any Person that prohibits [PNGS] or [PNG] or any of their Subsidiaries from providing any information to PAA in accordance with Section 6.5 or this Section 6.6.

38.     Though the Merger Agreement ostensibly has a "fiduciary out" provision that allows the Company to negotiate with other bidders, this provision would require a potential acquirer to first make an unsolicited offer.  Without access to non-public information, which the Company is prevented from offering under the Merger Agreement prior to the receipt of an offer that the Company reasonably expects to lead to a superior deal, no other bidders will emerge to make a superior proposal.

39.     Furthermore, under section 6.6(b) of the Merger Agreement, should it receive an unsolicited bid, the Company must notify PAA of the bidder's offer and provide PAA with all the material terms of the competing offer.  Moreover, under section 6.6(c) PNG is barred from entering into any confidentiality agreements that bar PNG or PNGS from providing any information to PAA.  PAA will be able to match the unsolicited offer because it is granted unfettered access to the unsolicited offer, in its entirely, eliminating any leverage the Company has in receiving the unsolicited offer.

40.     Also, pursuant to sections 8.2 and 8.3 of the Merger Agreement, PNG must pay expenses to PAA of up to $5 million if PAA determines there has been any material breach.  The termination fee equates to approximately $0.08 per PNG unit that will be paid directly to PAA rather than PNG unitholders, thereby making it even more difficult for any competing bidder to acquire the Company.  This termination fee amounts to over 0.4% of the Proposed Acquisition's value.

41.     Further, the October 24, 2013 Form 8-K filed with the SEC also disclosed agreements entered into between the Company and PAA.  This voting agreement ensures that PAA will vote all PNG common and subordinated units owned in favor of the Proposed Acquisition and against any competing proposal for the Company.  As detailed herein, PAA owns 100% of the subordinate units and 46% of the common units.  Thus, PAA only needs 4% of the remaining common units to vote in favor of the Proposed Acquisition in order for the transaction to be approved.  Therefore, in addition

to all the above, any potential third party will necessarily already have the unitholder vote substantially stacked against it.

42.    These onerous and preclusive deal protection devices, which will operate to unreasonably deter and discourage superior offers from other interested parties, were agreed to by the Individual Defendants to help secure the personal benefits and unfair profits afforded to them. By negotiating for such personal benefits in connection with the consummation of the Proposed Acquisition, the Individual Defendants placed their own personal interests before those of the Company's unitholders thus resulting in the Proposed Acquisition being presented to PNG unitholders at an untenable and inadequate offer price.

## FAILURE TO MAXIMIZE SHAREHOLDER VALUE

43.    The Individual Defendants' fiduciary duties require them to maximize unitholder value when entering into a change-in-control transaction such as the Proposed Acquisition.  Here, however, the proposed consideration to be paid by PAA in the merger does not reflect the true inherent value of PNG as known only by the Individual Defendants, as directors and officers of the Company, and PAA, as the controlling unitholder at the time the Proposed Acquisition was announced.

44.    Despite the fact that market conditions for natural gas storage have considerably depressed in 2013, PNG has maintained a solid balance sheet and liquidity, and has experienced significant growth for years.  In fact, the Company has exceeded analysts' EPS and net income expectations for the last nine quarters, and exceeded analysts' sales expectations for the last three quarters.

45.    On February 6, 2013, PNG reported its fiscal year 2012 and fourth quarter 2012 results, which included increases in net income for both periods as compared to the comparable periods a year ago.  Among other things, PNG's net income increased from $59.7 million in fiscal 2011 to $73.3 million in fiscal 2012.  PNG's fourth quarter 2012 net income also increased to $22.4

million as compared to net income of $22 million for the fourth quarter of 2011. The Company's adjusted EBITDA also grew for fiscal 2012, increasing to $122.4 million as compared to $107.2 million for the fiscal year of 2011.  For the fourth quarter of 2012, as compared to the fourth quarter of 2011, PNG's adjusted EBITDA increased to $35.2 million as compared to $33.4 million. Defendant Liollio boasted about the Company's "solid … results …, disciplined business strategy, strategically located assets, and high percentage of contracted fee-based storage revenue." Defendant Liollio further provided guidance for 2013, stating that it "incorporates the benefit of our low-cost storage capacity expansions at Southern Pines and Pine Prairie, which are expected to largely offset the adverse impact from recontracting capacity that was contracted at higher prices several years ago during more favorable market conditions."  In addition, defendant Liollio noted that the Company's $168 million in committed liquidity "well positioned [the Company] to finance its ongoing capacity expansion activities."

46.    The Company's growth continued.  On May 6, 2013, PNG reported that its first quarter net income for 2013 increased an impressive 12% to $18 million as compared to net income of $16 million for the first quarter of 2012.  PNG's adjusted EBITDA also shot up by over 13% to $31.6 million as compared to an adjusted EBITDA of $27.8 million for the same quarter of the previous year.  Impressively, this marked the eleventh consecutive quarter that the Company performed in line with or above guidance.  As noted by defendant Liollio:

> PNG continues to deliver steady performance while capitalizing on attractive, low-cost capacity expansion opportunities with $43 million of organic investment planned for 2013. Additionally, PNG remains well positioned from a financial perspective, ending the quarter within our targeted credit metrics and with $131 million of committed liquidity.

47.    As disclosed on August 5, 2013, the Company's adjusted EBITDA continued to grow in the second quarter of 2013, increasing to $30.6 million as compared to $29.7 million for the second quarter of 2012.  Although the growth was not as significant as the preceding quarter, it exceeded the high end of the Company's guidance range.  More, despite the fact that market

conditions for natural gas storage "weakened considerably over the last few months," the Company remained well positioned "for the remainder of the year." In addition, as noted by defendant Liollio, the Company's "organic growth projects remain on time and on budget, and [the Company] continue[s] to execute [its] disciplined business strategy while maintaining a solid balance sheet and liquidity."

48.     The Company remains in a strong position and continues to experience growth, despite the depressed market. The proposed consideration, however, provides the Company's unitholders with a mere 9.38% premium, based on the companies' closing prices on August 27, 2013, the day before the market price had adjusted based on PAA's initial offer. In stark contrast, the average one-day premium to a target's stock price for transactions valued between $500 million and $5 billion announced in the last three years in the gas storage and transportation industry is *over 38%, nearly four times the one-day premium being offered by PAA*.

49.     The proposed consideration is also particularly inadequate when compared to the value of other similarly-sized companies in the oil and gas storage and transportation industry, such as MPLX LP, Oiltanking Partners, L.P., Holly Energy Partners L.P., Tallgrass Energy Partners, LP, Kinder Morgan Management LLC, Rose Rock Midstream, L.P., Niska Gas Storage Partners LLC, Southcross Energy Partners, L.P., and Spectra Energy Partners, LP.

50.     A common way to value a public company is by deriving the share price to normalized EPS multiples of its peer group and then applying that range to the target company's respective financial measure. A multiple of normalized EPS can be derived by dividing the actual share price by the "normalized" EPS. EPS is "normalized" by adjusting for unusual items in the company's financials that do not recur and are not part of normal business operations, such as merger and restructuring charges, earnings of discontinued operations, or accounting changes. The Company's peers have a trading range of between 41.81x and 58.13x normalized EPS. Using these multiples, the Company should have the per unit price range of $27.29 to $37.94 based on

normalized EPS of $0.65.  **This is at minimum $4.22 or 18.3% more than the proposed consideration**.

51.    Alternatively, a public company can be valued by performing a similar analysis with generally accepted accounting principles ("GAAP") EPS rather than normalized EPS.  GAAP EPS is EPS based on net income that is calculated fully in accordance with GAAP without any normalization adjustments.   The Company's peers have a trading range of between 28.32x and 31.62x GAAP EPS.  Using these multiples, the Company should have the per unit price range of $28.39 to $31.70 based on GAAP EPS of $1.00.  **This is $5.32 or 23.1% more than the proposed consideration**.

## THE INSIDER BENEFITS PROVIDED BY THE PROPOSED ACQUISITION

52.    In order to meet their fiduciary duties, the Individual Defendants are obligated to explore transactions that will maximize unitholder value, and not structure a preferential deal for themselves.  Here, however, the Individual Defendants have disloyally placed their own interests first, and tailored the terms of the Proposed Acquisition so as to aggrandize their own financial position.

53.    On information and belief, due to the fact that the Company will continue as a wholly owned subsidiary of PAA, it appears that certain members of the PNG senior management team will receive prestigious positions at PAA when the Company is combined with the PAA management team.  On information and belief, it further appears that the Individual Defendants will receive substantial bonuses or other compensation as a result of the merger that are not shared with the Company's unitholders.

54.    In short, the Proposed Acquisition is wrongful, unfair, and harmful to PNG's public unitholders, and represents an effort by the Individual Defendants to aggrandize their own financial position and interests at the expense of and to the detriment of the Class.  Specifically, defendants are attempting to deny plaintiff and the Class their unitholder rights through the sale of PNG via an

unfair process.  Accordingly, the Proposed Acquisition will benefit the Individual Defendants at the expense of PNG unitholders.

55.     In order to meet their fiduciary duties, the Individual Defendants are obligated to explore transactions that will maximize unitholder value, and not structure a preferential deal for themselves.  Due to the Individual Defendants' eagerness to enter into a transaction with PAA, they failed to implement a process to obtain the maximum price for PNG unitholders.

56.     As a result of defendants' conduct, PNG's public unitholders have been and will continue to be denied the fair process and arm's-length negotiated terms to which they are entitled in a sale of their Company.  The consideration offered does not reflect the true inherent value of the Company that was known only to the Individual Defendants, as directors and officers of PNG, and PAA at the time the Proposed Acquisition was announced.

57.     In light of the foregoing, the Individual Defendants must, as their fiduciary obligations require:

- Withdraw their consent to the sale of PNG and allow the units to trade freely —without impediments such as the aforementioned no-solicitation, matching rights, and termination fee provisions;

- Act independently so that the interests of PNG's public unitholders will be protected;

- Adequately ensure that no conflicts of interest exist between defendants' own interests and their fiduciary obligation to maximize stockholder value or, if such conflicts exist, to ensure that all conflicts be resolved in the best interests of PNG's public unitholders; and

- Solicit competing bids to PAA's offer without the impediments listed above to ensure that the Company's unitholders are receiving the maximum value for their units.

## CLASS ACTION ALLEGATIONS

58.     Plaintiff brings this action individually and as a class action pursuant to on behalf of all holders of PNG stock who are being and will be harmed by defendants' actions described below (the "Class").   Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

59.     This action is properly maintainable as a class action.

60.     The Class is so numerous that joinder of all members is impracticable.  According to PNG's SEC filings, there are more than 61.1 million units of PNG common units outstanding as of September 15, 2013.

61.     There are questions of law and fact which are common to the Class and which predominate over questions affecting any individual Class member.  The common questions include, inter alia, the following:

(a)     whether the Individual Defendants have breached their fiduciary duties of undivided loyalty, good faith, diligence, fair dealing, independence, and/or due care with respect to plaintiff and the other members of the Class in connection with the Proposed Acquisition;

(b)     whether the Individual Defendants breached their fiduciary duty to secure and obtain the best price reasonable under the circumstances for the benefit of plaintiff and the other members of the Class in connection with the Proposed Acquisition;

(c)     whether the Individual Defendants are conflicted or otherwise engaging in self-dealing in connection with the Proposed Acquisition;

(d)     whether the Individual Defendants have breached any of their other fiduciary duties owed to plaintiff and the other members of the Class in connection with the Proposed Acquisition;

(e)     whether the Individual Defendants are unjustly enriching themselves and/or the other insiders/affiliates of PNG in connection with the Proposed Acquisition;

(f)      whether the Individual Defendants, in bad faith and for improper motives, impeded or erected barriers designed to discourage other potentially interested parties from making an offer to acquire the Company or its assets;

(g)      whether PNG aided and abetted any of the Individual Defendants' breaches of fiduciary duty owed to plaintiff and the other members of the Class in connection with the Proposed Acquisition;

(h)      whether PAA aided and abetted any of the Individual Defendants' breaches of fiduciary duty owed to plaintiff and the other members of the Class in connection with the Proposed Acquisition; and

(i)      whether plaintiff and the other members of the Class would suffer irreparable injury were the Proposed Acquisition consummated.

62.      Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff does not have any interests adverse to the Class.

63.      Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature and will fairly and adequately protect the interests of the Class.

64.      The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class that would establish incompatible standards of conduct for the party opposing the Class.

65.      Plaintiff anticipates that there will be no difficulty in the management of this litigation.  A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

66.      Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## COUNT I

### For Breach of Fiduciary Duties Against the Individual Defendants

67.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

68.     The Individual Defendants have violated the fiduciary duties of care, loyalty, good faith and independence owed to the public unitholders of PNG and have acted to put their personal interests ahead of the interests of PNG's unitholders.

69.     By the acts, transactions, and course of conduct alleged herein, defendants, individually and acting as a part of a common plan, are attempting to unfairly deprive plaintiff and other members of the Class of the true value inherent in and arising from PNG.

70.     The Individual Defendants have violated their fiduciary duties by entering PNG into the Proposed Acquisition without regard to the effect of the Proposed Acquisition on PNG's unitholders.

71.     As demonstrated by the allegations above, the Individual Defendants failed to exercise the care required, and breached their duties of loyalty, good faith, and independence owed to the unitholders of PNG because, among other reasons:

            (a)     they failed to take steps to maximize the value of PNG to its public unitholders;

            (b)     they failed to properly value PNG and its various assets and operations; and

            (c)     they ignored or did not protect against the numerous conflicts of interest resulting from the Individual Defendants' own interrelationships or connection with the Proposed Acquisition.

72.     Because the Individual Defendants dominate and control the business and corporate affairs of PNG, and have access to private corporate information concerning PNG's assets, business and future prospects, there exists an imbalance and disparity of knowledge and economic power

between them and the public unitholders of PNG which makes it inherently unfair for them to pursue and recommend any Proposed Acquisition wherein they will reap disproportionate benefits to the exclusion of maximizing unitholder value.

73.     By reason of the foregoing acts, practices, and course of conduct, the Individual Defendants have failed to exercise ordinary care and diligence in the exercise of their fiduciary obligations toward plaintiff and the other members of the Class.

74.     The Individual Defendants are engaging in self-dealing, are not acting in good faith toward plaintiff and the other members of the Class, and have breached and are breaching their fiduciary duties to the members of the Class.

75.     As a result of the Individual Defendants' unlawful actions, plaintiff and the other members of the Class will be irreparably harmed in that they will not receive their fair portion of the value of PNG's assets and operations.  Unless the Proposed Acquisition is enjoined by the Court, the Individual Defendants will continue to breach their fiduciary duties owed to plaintiff and the members of the Class, will not engage in arm's-length negotiations on the Merger Agreement's terms, and may consummate the Proposed Acquisition, all to the irreparable harm of the members of the Class.

76.     Plaintiff and the members of the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can plaintiff and the Class be fully protected from the immediate and irreparable injury which defendants' actions threaten to inflict.

## COUNT II

### For Aiding and Abetting Breach of Fiduciary Duty Against PNG

77.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

78.     The Individual Defendants owed to plaintiff and the members of the Class certain fiduciary duties as fully set out herein.

79.     By committing the acts alleged herein, the Individual Defendants breached their fiduciary duties owed to plaintiff and the members of the Class.

80.     PNG colluded in or aided and abetted the Individual Defendants' breaches of fiduciary duties, and was an active and knowing participant in the Individual Defendants' breaches of fiduciary duties owed to plaintiff and the members of the Class.

81.     Plaintiff and the members of the Class shall be irreparably injured as a direct and proximate result of the aforementioned acts.

**COUNT III**

**For Aiding and Abetting Breach of Fiduciary Duty Against
PAA, PNGS, PAAGP, Plains APP, Plains AAGP, and Merger Sub**

82.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

83.     The Individual Defendants owed to plaintiff and the members of the Class certain fiduciary duties as fully set out herein.

84.     By committing the acts alleged herein, the Individual Defendants breached their fiduciary duties owed to plaintiffs and the members of the Class.

85.     PAA, PNGS, PAAGP, Plains APP, Plains AAGP, and Merger Sub colluded in or aided and abetted the Individual Defendants breaches of fiduciary duties, and were an active and knowing participant in the Individual Defendants' breaches of fiduciary duties owed to plaintiff and the members of the Class.

86.     PAA, PNGS, PAAGP, Plains APP, Plains AAGP, and Merger Sub participated in the breach of the fiduciary duties by the Individual Defendants for the purpose of advancing their own interests.  PAA, PNGS, PAAGP, Plains APP, Plains AAGP, and Merger Sub obtained and will obtain both direct and indirect benefits from colluding in or aiding and abetting the Individual Defendant's breaches.  PAA, PNGS, PAAGP, Plains APP, Plains AAGP, and Merger Sub will

benefit, inter alia, from the acquisition of the Company at an inadequate and unfair consideration if the Proposed Acquisition is consummated.

87.     Plaintiff and the members of the Class shall be irreparably injured as a direct and proximate result of the aforementioned acts.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff demands injunctive relief, in its favor and in favor of the Class and against defendants as follows:

A.     Declaring that this action is properly maintainable as a class action;

B.     Declaring and decreeing that the Merger Agreement was entered into in breach of the fiduciary duties of defendants and is therefore unlawful and unenforceable;

C.     Rescinding, to the extent already implemented, the Merger Agreement;

D.     Imposition of a constructive trust, in favor of plaintiff and members of the Class, upon any benefits improperly received by defendants as a result of their wrongful conduct;

E.     Awarding plaintiff the costs and disbursements of this action, including reasonable attorneys' and experts' fees; and

F.     Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

DATE: October 29, 2013                    THE WARNER LAW FIRM
                                          PAUL T. WARNER


                                          _s/Paul T. Warner_
                                          PAUL T. WARNER

                                          SBN: 00791884
                                          SDTXBN: 25143
                                          11123 McCracken Lane, Suite A
                                          Cypress, TX 77429
                                          Telephone: (281) 664-7777
                                          Facsimile: (281) 664-7774
                                          pwarner@warner-law.net

                                          ROBBINS ARROYO LLP
                                          BRIAN J. ROBBINS
                                          STEPHEN J. ODDO
                                          EDWARD B. GERARD
                                          JUSTIN D. RIEGER
                                          600 B Street, Suite 1900
                                          San Diego, CA 92101
                                          Telephone: (619) 525-3990
                                          Facsimile: (619) 525-3991
                                          brobbins@robbinsarroyo.com
                                          soddo@robbinsarroyo.com
                                          egerard@robbinsarroyo.com
                                          jrieger@robbinsarroyo.com

                                          Attorneys for Plaintiff